IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| BILLY PAIGE,                )<br>                             )<br>    Plaintiff,              )<br>                             )    CIVIL ACTION NO.<br>    v.                       )      2:18cv737-MHT<br>                             )           (WO)<br>EQUITY GROUP EUFAULA         )<br>DIVISION, LLC,               )<br>                             )<br>    Defendant.               ) | |

## OPINION

Plaintiff Billy Paige filed this lawsuit claiming that his employer, defendant Equity Group Eufaula Division, LLC, failed to promote him to two positions because he is African-American, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e to 2000e-17, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.  The court's jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 2000e-5(f) (Title VII), and 28 U.S.C. § 1343 (civil rights).

This case is now before the court on Equity Group's motion for summary judgment. For the reasons that follow, the motion will be granted.

## I. Summary-Judgment Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Where, as here, the non-moving party bears the burden of proof at trial, "the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support its case, or present 'affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc)). Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the

non-moving party to show that a genuine issue of material fact exists.  *See id.*  In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.  Factual Background

The facts, viewed in the light most favorable to Paige, are as follows:

Equity Group runs a plant for turning raw chicken into fast-food products.  Paige is a line worker.

In 2017, Equity Group announced that it was hiring for two managerial positions:  Broiler Flock Representative and Broiler Housing Coordinator.  The Broiler Flock Representative would be responsible for providing advice and support to the third-party farmers with whom the company contracts to supply its chicken. The Broiler Housing Coordinator would be responsible for

assisting the third-party farmers to construct and maintain chicken houses. Hiring Manager David Brown was responsible for filling both positions. According to Equity Group policy, Brown was to fill the positions by promotion from within the company, if possible.

Paige applied for both positions. He had, at most, seven years of experience relevant to the Broiler Flock Representative position, and some experience constructing farm buildings.

Brown spoke with his own supervisor, Kenneth Edwards, about Paige's application for the Broiler Flock Representative position. Edwards informed Brown that Paige had previously worked as a manager on another farm, that he had been written up several times, and that he had been terminated. Edwards told Brown that he "might need to look long and hard at that resume." Def.'s Ex. C, Brown Deposition, at 25 (Doc. 45-4).

Brown did not hire Paige for either position. He hired Jeremy Flowers for the Broiler Flock Representative

4

position. Brown determined that Flowers was more qualified than Paige because he had some college education and over 14 years of experience with another poultry company in a similar position, whereas Paige did not. Brown also knew Flowers's family, which he weighed in his favor. Flowers is white, and had not been previously employed by Equity Group. Flowers had left his previous job because he did not get along with management.

Brown hired Matthew Blankenship for the Broiler Housing Coordinator position. Brown determined that Blankenship was more qualified than Paige because he had seven years of experience as a Broiler Flock Representative, which Brown deemed relevant to his qualification for the Broiler Housing Coordinator position, whereas Paige had no experience as a Broiler Flock Representative. Brown also considered that Blankenship had experience building chicken houses on his family's farm. Blankenship is white.

In his tenure as hiring manager, Brown has hired six or seven Broiler Flock Representatives. All have been white.

## III. Discussion

Title VII states: "It shall be an unlawful employment practice for an employer ... to fail or refuse to hire ... any individual ... because of such individual's race." 42 U.S.C. § 2000e-2(a). Section 1981 states: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Paige claims that he was not hired for the Broiler Flock Representative and Broiler Housing Coordinating positions because of his race, in violation of both statutes.

Such claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v.*

6

*Green*, 411 U.S. 792 (1973).  *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1324–25 (11th Cir. 2011).  Under *McDonnell Douglas*, the employee must first demonstrate a prima-facie case, which consists of "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977).  "The methods of presenting a prima facie case are flexible and depend on the particular situation." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).  Once established, a prima-facie case raises a presumption of illegal discrimination, *see Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981), and a burden of production is then put on the employer to rebut the presumption by articulating at least one legitimate, non-discriminatory reason for its challenged action, *see Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).

If this burden of production is met, the burden is then on the employee to satisfy his ultimate burden of establishing that the employer's proffered reason for the employment decision was a pretext for racial discrimination, a burden which he may satisfy "either directly, by persuading the court that a discriminatory reason more than likely motivated the employer, or indirectly, by persuading the court that the proffered reason for the employment decision is not worthy of belief." *Hall v. Alabama Ass'n of Sch. Bds.*, 326 F.3d 1157, 1166 (11th Cir. 2003). Where the employer has proffered multiple nondiscriminatory reasons for its employment decision, the employee must demonstrate that each is pretextual to avoid summary judgment. *See Chapman*, 229 F.3d at 1037.

Often, the question whether the plaintiff has made out a prima-facie case is irrelevant when the district court considers an employer's motion for summary judgment. *See Bailey-Potts v. Ala. Dep't of Pub. Safety*,

8

2012 WL 566820, at *3 (M.D. Ala. Feb. 21, 2012) (Thompson, J.); *Shuford v. Ala. State Bd. of Ed.*, 978 F. Supp. 1008, 1017 (M.D. Ala. 1997) (Thompson, J.) ("[W]here . . . the court has sufficient evidence to determine whether an employee has been a victim of discrimination, the court need not go through the *McDonnell Douglas* burden-shifting process and should instead reach the ultimate issue of discrimination."). That is because, "[u]nder the *McDonnell Douglas* framework, the burden at the first two steps is light for both the plaintiff and the defendant-employer." *Bailey-Potts*, 2012 WL 566820, at *3. Thus, "the real question [often] lies in whether the employer's legitimate non-discriminatory reason is pretextual," *id.* at *4, which, as stated, is the final inquiry in the *McDonnell Douglas* analysis. *See Hall*, 326 F.3d at 1166 ("'If ... the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework--with its presumptions and burdens--is no longer relevant. ... The presumption, having fulfilled

9

its role of forcing the defendant to come forward with some response, simply drops out of the picture.'") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993)).

In this case, Equity Group asserts that it did not hire Paige for either position because his termination from his previous farm-manager job was disqualifying, and because Brown determined that Flowers and Blankenship were more qualified candidates--a determination that Brown based on the fact that Flowers had more than twice as much relevant experience as Paige, and the fact that Blankenship had seven years of relevant experience as a Broiler Flock Representative, whereas Paige had none.[1]

---

1. Equity Group also asserts that it did not hire Paige because he did not have enough relevant experience to be qualified for either job. For the same reason, and because, according to the company, Brown did not know Paige's race when he chose not to hire him, the company asserts that Paige cannot establish a prima-facie case. Paige asserts that he was qualified and that Brown did know his race. The court need not address either matter, however, because Paige has failed to demonstrate that the company's other justifications for not hiring him are pretextual, as he must to survive summary judgment.

Paige has not produced sufficient evidence for a reasonable fact-finder to find either of Equity Group's justifications to be a pretext for racial discrimination. With regard to the company's assertion that his prior termination was disqualifying, he emphasizes that the company hired Flowers despite the fact that he did not get along with management at his previous job.  But he presents no evidence that Flowers was ever written up or terminated.

With regard to Equity Group's assertion that Flowers and Blankenship were superior candidates, Paige touts his qualifications for both positions.  But where a claim of discrimination is based on relative qualifications, the disparities in qualifications must be "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 889 (11th Cir. 2011) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732

11

(11th Cir. 2004)).  Here they are not.  Indeed, the evidence is that both Flowers and Blankenship had more relevant experience than Paige.[2]

Paige also contends that Equity Group could not have found Flowers or Blankenship to have been more qualified than him because Brown asserted in a deposition that he could not remember whether Paige applied for the Broiler Housing Coordinator position, and because Brown never contacted him or his current supervisor regarding his qualifications for either position.  After his

---

2. With regard to Equity Group's decision to hire Flowers, specifically, Paige notes that it was the company's policy to "try to fill job openings above entry level by promoting from within, if qualified applicants are known to be available internally," and that Flowers was an outside candidate. Pl.'s Ex. 1 at 2 (Doc. 49-1). Equity Group responds:  "[T]here is no evidence that Equity Group failed to follow its hiring policies. While Paige may believe that he should have been hired because he was an internal candidate, Equity Group's policies do not guarantee that internal candidates are hired in every instance."  Def.'s Reply Br. at 9 (Doc. 52).  The court agrees that Paige has not presented sufficient evidence from which a reasonable fact-finder could conclude that this policy was not applied fairly in the filling of the two positions.  The company did not say it would  restrict itself to qualified internal candidates.

deposition, however, Brown asserted in an affidavit that he found Blankenship more qualified for the Broiler Housing Coordinator than Paige for the reasons given above. *See* Def.'s Tab E, Decl. of David Brown at 7 (Doc. 45-6). The fact that Brown at one point could not remember whether Paige applied for the Broiler Housing Coordinator position does not undermine his later assertion. It is likewise irrelevant that Brown failed to look beyond Paige's resume. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair.").

Finally, Paige contends that Brown's failure to hire African-Americans for Broiler Flock Representative positions demonstrates pretext. Brown's failure to hire African-Americans, however, is not, on its own, sufficient to establish that Equity Group did not hire Paige because of his race. Rather, Paige must also present evidence that qualified African-American

13

candidates applied for the positions, and he must present at least some circumstantial evidence suggesting that Equity Group did not hire those African-American candidates because of their race. *See Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1325 (11th Cir. 2006) (finding plaintiff's statistical evidence insufficient to support her discrimination claim where she "failed to establish valid comparators and presented no other circumstantial evidence suggesting racial discrimination"); *cf. EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1287 (11th Cir. 2000) ("A plaintiff may establish a pattern or practice claim 'through a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally.'") (quoting *Mozee v. Am. Com. Marine Service Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991)). Paige has done neither.[3]

---

3. Paige suggests that Brown's reliance on his knowledge of Flowers's family is circumstantial evidence

14

Accordingly, the court will grant Equity Group's motion for summary judgment.

***

An appropriate judgment will be entered.

DONE, this the 16th day of September, 2021.

                         /s/ Myron H. Thompson
                         UNITED STATES DISTRICT JUDGE

---

that Brown did not hire Paige because of his race. *See* Pl.s' Br. in Opposition to Summary Judgment at 23-24 (Doc. 48) ("[T]he use of friends and family who are the same race as you to determine who [*sic.*] to hire can be evidence of bias against those of another race."). But while Brown's preference for candidates within his social circle might be consistent with racial bias, it cannot, on its own, sustain a claim of discriminatory hiring. Indeed, neither Title VII nor § 1981 prevents an employer from hiring a candidate because he knows his family. Rather, Paige must present some evidence that Brown chose to hire from within his social circle because he did not wish to hire African-American candidates. *Cf. Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir. 2001) ("Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext."). Paige has presented no such evidence.